### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD H. KREGER, BRUCE C. RYAN and RHK CAPITAL, LLC<br>　　*Plaintiffs,*<br><br>v.<br><br>WILLIAM H. MCCANCE, SUSAN M. LEMOINE, ADVISORY GROUP EQUITY SERVICES, LTD., TAG GROUP, INC., and TRUST ADVISORY GROUP, LTD (f/k/a Trust Advisory Services. Ltd.)<br>　　*Defendants,* | : <br> : <br> : <br> : Civil Action No. 3:21 CV-<br> : <br> : <br> : <br> : <br> : <br> : <br> : March 𝟤𝟧, 2021 <br> : |

### VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF
### AND FOR ORDER COMPELLING FINRA ARBITRATION

Richard H. Kreger ("Kreger"), Bruce C. Ryan ("Ryan") and RHK Capital, LLC ("RHK") (collectively, the "Plaintiffs") bring the following complaint against the Defendants, William H. McCance ("McCance"), Susan M. Lemoine ("Lemoine"), Advisory Group Equity Services, Ltd. ("AGES"), Tag Group, Inc. ("TGI"), and Trust Advisory Group, Ltd.(f/k/a Trust Advisory Services, Ltd. ("TAG") (collectively, the "Defendants") seeking a temporary a restraining order to stop the Defendants from soliciting the Plaintiffs' broker-dealer agents, investment adviser representatives (collectively, "agents"), customers, clients and otherwise interfering with the Plaintiffs' business. The Plaintiffs also seek an order compelling arbitration before a Financial Industry Regulatory Authority ("FINRA") arbitration panel pursuant to Rules 13200 and 13804 of the FINRA Code of Arbitration Procedure.

## NATURE OF THE CASE

1.  This action is based on the Defendants' willful breach of an Office of Supervisory Jurisdiction Manager Agreement that the Defendants executed on or about January 1, 2017.

## JURISDICTION AND VENUE

2.  Jurisdiction is proper in this Court under 28 U.S.C Section 1332a, because there is complete diversity of citizenship between Plaintiffs and Defendants and more than Seventy-Five Thousand ($75,000.00) dollars, exclusive of interests and costs, is at stake.

3.  Plaintiff RHK is a Connecticut limited liability company with a principal place of business located in Westport, Connecticut.

4.  Plaintiff Kreger is a resident of Weston, Connecticut.

5.  Plaintiff Ryan is a resident of Fairfield, Connecticut.

6.  Defendant, William McCance is a resident of Reading, Massachusetts.

7.  Defendant Susan Lemoine is a resident of Beverly, Massachusetts.

8.  The potential loss to the Plaintiffs exceeds Seventy-Five Thousand ($75,000.00) dollars, exclusive of interests and costs.

## GENERAL ALLEGATIONS

9.  Plaintiff Kreger is a broker-dealer agent of Noble Capital Markets, Inc., a registered broker-dealer and an Investment Adviser Representative of Noble Capital Management, Inc., a Registered Investment Adviser.  Prior to becoming registered with these firms, he was a principal of AGES and TAG, a shareholder of TGI and an owner of the Office of Supervisory Jurisdiction created by AGES, TGI, and TAG.

2

10. Plaintiff Ryan is a broker-dealer agent of Noble Capital Markets, Inc., a registered broker-dealer and an Investment Adviser Representative of Noble Capital Management, Inc., a Registered Investment Adviser. Prior to becoming registered with these firms, he was a principal of AGES and TAG and an owner of the Office of Supervisory Jurisdiction created by AGES, TGI, and TAG.

11. Plaintiff RHK is a Connecticut limited liability company which is a service company located in Westport, Connecticut and an owner of the Office of Supervisory Jurisdiction created by AGES, TGI, and TAG.

12. Defendant McCance is a resident of Reading, Massachusetts and is the principal and Chief Executive Officer and President of Defendants AGES, TGI, and TAG.

13. Defendant Lemoine is a resident of Beverly, Massachusetts and is the Chief Operating Officer and Principal of Defendants AGES, TGI, and TAG.

14. Defendant AGES is a Massachusetts corporation located in Woburn, Massachusetts and is a registered broker-dealer.

15. Defendant TAG is a Massachusetts corporation located in Woburn, Massachusetts and is a federally registered investment adviser.

16. Defendant TGI is a Massachusetts corporation located in Woburn, Massachusetts and is the owner of AGES and TAG.

17. On November 30, 2016 AGES and TAG executed a Business Transfer Agreement in which it acquired the "Business" of Source Capital Group, Inc. ("Source").

18. "Business" was defined as all the Source registered representatives; all Source customer account agreements; all Source investment advisory service agreements and management agreements; all Source agreements with product and service providers; all software

3

and other systems which were currently in use by the Transferor and representatives as specified in the Business Transfer Agreement; all terminals, subscriptions and other services obtained by Source and used at the time by Source and used currently by its representatives in the operation of the business; .all solicitor and selling or other agreements, advertising and other programs in use by Source related to the business; and any other contracts, services or arrangements used in the Business and more particularly specified in the Business Transfer Agreement.

19. As consideration for the transfer of the business AGES and TAG agreed to establish a "Super OSJ" managed by David Harris, Ryan and Kreger as Managing Principals of the "Super OSJ" and as registered principals of AGES and TAG.  An OSJ is an office of supervisory jurisdiction which generally operates independently of its sponsoring broker-dealer and pays a fee to the broker-dealer for administrative and compliance services.  The Business Transfer Agreement required the creation of OSJ Manager Agreements providing monthly cash payments to the OSJ Managers.

20. On or about February 2017 David Harris sold his interest in the Super OSJ to RHK and did not become registered with AGES or TAG.

21. Ryan sand Kreger entered into an OSJ Manager Agreement with AGES and TAG which required payments of (a) 97.5% of investment banking, syndicate and primary offerings and any transaction on behalf of any issuer that is from a registration statement or unregistered offering, private placement, debt issuance, etc.; (b) 95% of the net fees, commissions, and other revenues after clearing and execution charges, of all other business generated by (i) registered representatives who were licensed with Source and who transferred their registrations to AGES and TAG plus (ii) all new representatives recruited by the OSJ Managers (collectively "Source Representatives") from existing accounts of Source customers and clients (including money

4

market accounts), plus revenues from any new accounts obtained by them (collectively "Source Accounts") for as long as such representatives remain properly registered with AGES and TAG, in good standing with the AGES and TAG and those continue to be carried or advised by either of AGES or TAG or their representatives, or 100% of all business; and (c) one hundred percent (100%) for the first seven (7) years subsequent to the Closing Date and ninety five percent (95%) thereafter on margin interest, money market rebates, postage and handling participation, net ticket overages (representative charges per ticket in excess of clearing firm costs), administrative rebates for inactive accounts and annual retention bonuses for asset maintenance after clearing and execution charges, generated by Source representatives from accounts (including money market accounts) formerly carried by Source and transferred to AGES and TAG as of the Closing Date, plus revenues from any new accounts obtained by them. This provision shall exist for as long as such Source Representatives remain properly registered with AGES or TAG and in good standing and such Source accounts continue to be carried by either AGES or TAG or their representatives.

22. Ryan, Kreger, and RHK were induced to enter into the OSJ Manager Agreements by Paragraphs 8 and 9 of those agreements.

23. Paragraph 8 states, in part: "AGES or TAG clients introduced to those entities by the OSJ Manager may, at the client's option, become a client of the OSJ Manager upon closure of the OSJ and the termination (of) this Agreement; however, if any client so chooses and is bound by a then current contract of any kind with (AGES and TAG), all fees, costs and expense reimbursement described in the contract shall be allocated between (AGES and TAG) and the OSJ Manager according to the terms and conditions of this Agreement, as if the client, the OSJ Manager, and the OSJ, TAG/OSJ relationships remained unchanged."

24. Paragraph 9 states, in part:  AGES and TAG …will not place any impediment in the way of and shall not in any way oppose the OSJ Manager or interfere with the further transfer or reassignment of any or all of the OSJ Representatives and their Source Accounts to any broker-dealer or investment adviser designated by the OSJ Manager.  AGES and TAG shall also proactively assist with such transfer in a reasonable and helpful manner complying with all rules and regulations.  Each OSJ Representative may solicit all of his/her customers or clients who transferred to  AGES or TAG…or who they serviced while registered with AGES or TAG…

25.  The provisions in paragraphs 8 and 9 induced the Plaintiffs to enter into the OSJ Manager Agreements with the Defendants because it allowed them to terminate or suffer termination of the agreement without the worry that their agents, clients, and customers would be free to move to a new broker-dealer and investment adviser without interference from the Defendants and, in fact, with affirmative aid from the Defendants.

26.  The Plaintiffs and Defendants adhered to the terms of the OSJ Agreements for almost four years.

27.  On November 30, 2020, pursuant to paragraph 2 of the OSJ Manager Agreement, AGES and TAG gave 60-day written notice to the Defendants that the OSJ Manager Agreements had been terminated.

28.  The Plaintiffs immediately identified a broker-dealer with which they wanted to affiliate.  They identified Noble Capital Markets, Inc. and Noble Capital Management, Inc. and informed the Defendants of this new affiliation.

29.  Among the reasons for affiliation with these entities is that they and AGES also utilized StoneX Financial, Inc. as a clearing broker.

30. Upon attempting to transfer the OSJ agents, customers, and clients to the Noble entities, the Plaintiffs discovered that the Defendants had no interest in complying with the terms of the OSJ Manager Agreements.

31. The Plaintiffs identified the following violations of the OSJ Manager Agreements:

a. The Defendants actively attempted to recruit RHK broker-dealer agents and investment advisor representatives to remain with AGES or TAG offering them drastically increased payouts.

b. The Defendants refused to allow positive or negative consent letters for purposes of transferring accounts or to even authorize the transfer of accounts.

c. The Defendants failed to assist in the transfer of investment accounts and money management accounts to Noble Capital Markets and Noble Capital Management within ten business days.

d. As an inducement to retain the OSJ broker-dealer agents the Defendants offered to reduce ticket charges to RHK broker-dealer agents by twenty-five percent from $20 per ticket to $14 per ticket.

e. The Defendants offered a long-time Source employee a significant raise and a two-year contract if he stayed with AGES.

f. The Defendants withheld and continue to withhold wages and overrides to be paid to Ryan, Kreger, and RHK which amount to no less than $102,000.

g. Every OSJ representative was solicited by the Defendants with offer letters sent immediately after termination notice on December 1, 2020 of the OSJ Agreement to remain with AGES with offers of increased compensation a full 60-days prior to the effective date of termination of the OSJ Agreement.

h. The Defendants have ignored paragraph 8 of the OSJ agreement which requires AGES & TAG to maintain the payments to the Plaintiffs in perpetuity based on the OSJ representatives' current and continuing business as if the OSJ remains intact.

i. The Defendants sent letters to accountholders, whose representatives have transferred their registrations to one of the Noble entities, without explanation of the transfer of registration, no forwarding contact information, and giving the impression that there is no representative for their account, contrary to the provisions of paragraphs 8 and 9 of the OSJ Manager Agreements. The result is that customers and clients have asked the broker-dealer agents and investment adviser representatives (1) whether they had been fired and (2) who or what is AGES.

7

32. By refusing to authorize a bulk transfer of accounts the Defendants have caused and are causing the Plaintiffs to expend significant time and cost in transferring the former Source accounts which had been the subject of the OSJ Agreement.

33. The OSJ Managers Agreement executed by the Defendants is a valid contract supported by adequate consideration.

34. The Defendants breached the OSJ Managers Agreement by the above-described conduct. Pursuant to the terms of the OSJ Managers Agreement, the Defendants agreed upon termination that if any client be bound by a then current contract of any kind with (AGES and TAG) , all fees, costs and expense reimbursement described in the contract shall be allocated between (AGES and TAG) and the OSJ Manager according to the terms and conditions of the OSJ Agreement, as if the client, the OSJ Manager, and the OSJ, TAG/OSJ relationships remained unchanged.

35. The Defendants further breached the OSJ Manager Agreement by the Defendants' above described conduct which violated and continues to violate the following provisions:  the OSJ Manager Agreements state that AGES and TAG ...will not place any impediment in the way of and shall not in any way oppose the OSJ Manager or interfere with the further transfer or reassignment of any or all of the OSJ Representatives and their Source Accounts to any broker-dealer or investment adviser designated by the OSJ Manager. AGES and  TAG shall also proactively assist with such transfer in a reasonable and helpful manner complying with all rules and regulations. Each OSJ Representative may solicit all of his/her customers or clients who transferred to AGES or TAG...or who they serviced while registered with AGES or TAG...

36. The Defendants continue to violate their contractual obligations and will continue to violate these obligations in the future.

8

37.  The Defendants' breach of the OSJ Managers Agreement is willful and malicious.

38.  As a consequence of the foregoing, the Plaintiffs have suffered and will continue to suffer irreparable harm for which they lack an adequate remedy at law, as well as incalculable financial loss.

39.  Unless the Defendants are enjoined from the foregoing conduct, the Plaintiffs will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE,** for the reasons set forth above, the Plaintiffs respectfully requests that this Court enter an order as follows:

1. enjoining the Defendants from, directly or indirectly, impeding in any way the transfers and reassignments of customers, clients, and representatives from AGES and TAG to Noble Capital Management, Inc. and Noble Capital Markets, Inc;

2. ordering the Defendants to proactively assist the OSJ Manager in transferring the relationships and client accounts to Noble Capital Management, Inc. and Noble Capital Markets, Inc. in a reasonable and helpful manner consistent with all FINRA, SEC and other applicable rules and regulations;

3. ordering the Defendants to facilitate the bulk transfer of relationships and client accounts from AGES and TAG to Noble Capital Management, Inc. and Noble Capital Markets, Inc. in a reasonable and helpful manner consistent with all FINRA, SEC and other applicable rules and regulations;

4. enjoining the Defendants from charging transfer fees to OSJ customers and clients;

5. enjoining the Defendants from withholding payments owed to the Plaintiffs based on prior business performed under the OSJ Agreement;

6. directing the parties to proceed toward an expedited arbitration hearing on the merits before a FINRA arbitration panel pursuant to Rule 13804 of the FINRA Code of Arbitration Procedure; and

7. providing that the Court's temporary restraining order shall remain in full force and effect pending completion of the FINRA arbitration.

**THE PLAINTIFFS,**

RICHARD H. KREGER, BRUCE C. RYAN and RHK CAPITAL, LLC

By: /s/ Stuart M. Katz
Stuart M. Katz (ct12088)
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604
Tel. (203) 368-0211
Fax (203) 337-5505
E-Mail: skatz@cohenandwolf.com

Richard Slavin (ct06304)
Cohen and Wolf, P.C.
320 Post Rd. West
Westport, CT 06880
Tel. 203-341-5310
Fax (203) 341-5311
E-Mail: rsavin@cohenandwolf.com

## VERIFICATION

STATE OF CONNECTICUT:

                  :       ss:

COUNTY OF FAIRFIELD  :

      I, Bruce C. Ryan, co-manager of RHK Capital LLC. am the authorized representative of RHK Capital, LLC and Richard H. Kreger for the purposes of verifying the foregoing Complaint.  I have personal knowledge of the matters set forth in the Complaint or the information contained therein that has been collected and made available to me by counsel and employees of RHK Capital, LLC.  I state, under penalties as provided by law under the laws of the United States, that the information and statements made therein are true and correct to the best of my knowledge and belief.

_____

Bruce C. Ryan

SUBSCRIBED AND SWORN to before me, this _25_ day of March 2021.

_____

Notary Public
My Commission Expires:

**PATRICIA KERCH**
**NOTARY PUBLIC**
My Commission Expires Nov. 30, 2022

11